# In The
# United States Court Of Appeals
# For The Sixth Circuit

———— ◆ ————

## CASE NO: 24-5126

———— ◆ ————

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

## JASON MEYERHOLZ,

*Defendant-Appellant.*

———— ◆ ————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

———— ◆ ————

**BRIEF OF THE APPELLANT
ORAL ARGUMENT REQUESTED**

———— ◆ ————

**JUNI S. GANGULI
GANGULI LAW FIRM
202 ADAMS AVENUE
MEMPHIS, TN 38103**

**901-554-9339**

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE SUBJECT MATTER AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE WITH RELEVANT FACTS . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    THE DISTRICT COURT ERRED BY FAILING TO SEVER APPELLANT FROM HIS CO-DEFENDANTS... . . . . . . . . . . . . . . . 9

        A.    Severance is required if a joint trial would prevent the jury from making a reliable judgment about a defendant's guilt or innocence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    The district court erred by not severing Mr. Meyerholz from his co-defendants at trial. . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    THE DISTRICT COURT ERRED BY ALLOWING THE PROOF OF AN UNRELATED FIGHT TO BE PRESENTED TO THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.    Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person unless there are certain exceptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    The fight did not fall into any of the exceptions and should have been excluded.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.    THE DISTRICT ERRED BY FAILING TO DECLARE A
        MISTRIAL BASED ON THE DELAY BETWEEN THE
        DIRECT AND CROSS EXAMINATION OF WITNESS
        ROBERT HUMISTON . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.    Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.    The delay between direct and cross-examination violated
              Mr. Meyerholz' Sixth Amendment right to confrontation. . . . 16

        C.    Mistrial was warranted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE
        CONVICTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        A.    Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.    Authorities in support. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        C.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

ADDENDUM:    DESIGNATED DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                                                 **<u>PAGE</u>**

*Arizona v. Washington*,
   434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). . . . . . . . . . . . . . . . . 22

*Boyle v. United States*,
   556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) . . . . . . . . . . 8, 24

*California v. Green*,
   399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970). . . . . . . . . . . . . . . . . 21

*Davis v Alaska*,
   415 U.S. 308 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Delaware v. Van Arsdall*
   475 U.S. 673 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Modesitt v. State*,
   578 N.E.2d 649 (Ind. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Musacchio v. United States*,
   577 U.S. 237, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016) . . . . . . . . . . . . . . . . 23

*Ross v. Petro*,
   515 F.3d 653 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Salinas v. United States*,
   522 U.S. 52, 62, 118 S.Ct. 469 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Atisha*,
   804 F.2d 920 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Cordero*,
   973 F.3d 603 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Emmons*,
    8 F.4th 454, 477 (6th Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Fields,*
    763 F.3d 443, 457 (6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*United States v. Fowler*
    535 F.3d 408 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Gallo*,
    763 F.2d 1504 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Gills,*
    702 F. App'x 367 (6th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Marrero,*
    651 F.3d 453, (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. McGee,*
    510 Fed. Appx. 377 (6th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Moore,*
    917 F.2d 215 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Richmond,*
    884 F.2d 581 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Sherrill,*
    972 F.3d 752 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Soto,*
    794 F.3d 635 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Swift,*
    809 F.2d 320 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Tisdale,*
    980 F.3d 1089 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Turkette,*
    452 U.S. 576, 101 S. Ct. 2524 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

*United States v. Williamson,*
    656 F. App'x 175 (6th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Woods*,
    14 F. 4th 544 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zafiro v. United States,*
    506 U.S. 534, 113 S. Ct. 933, 122 L.Ed. 317 (1993). . . . . . . . . . . . . . . 9, 10

## **CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

US Constitution, Amendment VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

18 U.S.C. § 1201(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

18 U.S.C. § 1959(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

18 U.S.C. § 1961(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 24

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24

18 U.S.C. § 1962(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests the Court schedule this case for oral arguments. Oral argument is necessary because the trial facts require additional explication beyond the realm of the trial transcripts and written briefs. The case involves several important legal issues from a complex criminal prosecution involving several defendants, including Mr. Meyerholz. The trial lasted over three months in 2022.

The Appellant further requests oral argument because an exchange between counsel and the Court will assist the Court's analysis of why the Appellant was denied a fair trial.

## STATEMENT OF THE SUBJECT MATTER AND
## APPELLATE JURISICTION

The district court had jurisdiction under 28 U.S.C. § 3231, which provides that the district courts of the United States shall have original jurisdiction of all offenses against the laws of the United States. The Government charged Mr. Meyerholz in the Third Superseding Indictment with violations of 18 U.S.C. §§ 1962(d)(3), 1201(a)(1), 1959(a)(1), 924(c) and 1959(a)(1). (R. 485, Third Superseding Indictment, Page ID# 1321). These offenses involved his participating in a racketeering activity, kidnapping, possessing a firearm during a crime of violence and murder.

The Court of Appeals for the Sixth Circuit has jurisdiction in this matter pursuant to 28 U.S.C. § 1291. That statute provides that the Court of Appeals has jurisdiction over appeals from a final judgment in a district court of the United States.

This appeal was initiated by means of a Notice of Appeal. It was timely filed on February 8, 2024. (R. 2769, Notice of Appeal, Page ID # 28055).

## STATEMENT OF ISSUES FOR REVIEW

1. Did the district court err by failing to sever Mr. Meyerholz from other co-defendants at trial of this cause?

2. Did the district court err by failing to declare a mistrial based on the amount of time that elapsed between the direct and cross-examinations of witness Robert Humiston?

3. Did the district court err by failing to exclude testimony of an assault that occurred that Rookie's Bar?

4. Whether the Government established by sufficient evidence that Mr. Meyerholz was guilty beyond a reasonable doubt of Counts Two and Three of the Superseding Indictment?

## STATEMENT OF THE CASE WITH RELEVANT FACTS

On January 10, 2018, a Second Superseding Indictment was filed in this action charging several defendants with various criminal offenses. Mr. Meyerholz was named in it. On June 29, 2018, a Third Superseding Indictment was filed in United District Court for the Middle District of Tennessee. (R. 485, Third Superseding Indictment, Page ID # 1321-89). Appellant was named in it as well.

Appellant was named in Counts 1, 56, 57, 58 and 59 of the Third Superseding Indictment. Count 1 charged several defendants under the RICO Act in violation of 18 U.S.C. § 1962(d). The Government also charged Mr. Meyerholz with violations of 18 U.S.C. §§ 1962(d)(3), 1201(a)(1), 1959(a)(1), 924(c) and 1959(a)(1). These offenses involved his participating in a racketeering activity, kidnapping, possessing a firearm during a crime of violence and murder.

On September 5, 2018, the district court issued an order setting the jury trial for April 7, 2020. (R. 585, Amended Scheduling Order, Page ID # 1838-43). Covid-19 then spread as a global pandemic. The parties moved for the district court to postpone the April 7, 2020 trial due to complications from the pandemic. (R. 1395, Joint Motion to Continue Trial, Page ID # 6922-31). On March 23, 2020, the district court ordered that the April 7 trial date be continued to May 11, 2020. (R. 1436, Order to Continue, Page ID # 7275-76).

3

The district court continued the May 11, 2020 trial date to April 1, 2021. (R. 1574, Order to Continue, Page ID # 8714-15). The district court was forced to consider a new trial date based on Covid-19 issues. In April 2022, the district court set a new trial date. The district court scheduled the trial date for Mr. Meyerholz - and the co-defendants whose cases were unresolved - to begin on June 1, 2022. (R. 1874, Order, Page ID # 10745-48).

Jury selection began on June 1, 2022. (R. 2072, Minute Entry, Page ID # 13694). The trial continued through June, July, August and into September 2022. The jury returned its verdicts on September 16, 2022 as to Mr. Meyerholz. (R. 2381, Redacted Jury Verdict Form, Page ID # 16460-16462). Mr. Meyerholz was convicted of Counts 1, 55, 56, 57, 58 and 59. 4 (Id.)

Although the trial began on June 1, 2022 and concluded on September 16, 2022, there were only 38 actual trial days. (R. 2367, Minute Entry, Page ID # 16381). The delays were due to outbreaks of Covid-19 with members of the jury, some of the defendants, or their counsel. The district court was also unavailable in late August 2022 because of a conference.

The Government called almost 100 witnesses during the trial. (R. 2385, Minute Entry, Page ID # 16468-16526). The Government introduced a total of 1,868 exhibits at the trial. (Id.). Most of the witnesses and exhibits had nothing to do with the allegations against Mr. Meyerholz.

4

Mr. Meyerholz was sentenced to a term of life imprisonment in Counts 1, 56, 57 and 59. The district court sentenced him to 240 months in Count 55. Those terms were concurrent with each other but consecutive to a 7-year term in Count 58. (R. 2758, Judgment, Page ID# 27978-27985). Trial counsel then withdrew from the case on February 1, 2024.

Counsel was appointed on February 6, 2024. Counsel timely filed a notice of appeal on February 8, 2024. (R. 2769, Notice of Appeal, Page ID # 28055). Mr. Meyerholz' appeal is properly before this Court.

Mr. Meyerholz was charged along with other defendants in a racketeering indictment that involved the Mongols motorcycle gang. The allegations in the indictment included homicides, assaults, acts of intimidation, kidnappings and drug distribution.

Mr. Meyerholz moved to Tennessee from Colorado in 2017. The overwhelming majority of the overt acts outlined in the Third Superseding Indictment occurred before he came to the Middle District of Tennessee. The only illegal overt act in which Mr. Meyerholz is alleged to have engaged in related to the November 2017 kidnapping and murder of Stephen Cole.

Mr. Meyerholz moved pre-trial to be severed from his co-defendants. (R. 893, Motion to Sever, Page ID # 3175). He alleged that there would be spillover prejudice from the admission of evidence that was relevant only to his co-defendants. (R. 893,

Motion to Sever, Page ID # 3175). The district court denied the motion without hearing. (R. 998, Memorandum opinion and omnibus order, Page ID# 4053-4098).

Mr. Meyerholz also moved to exclude reference to an altercation at Rookie's Bar. The prosecution alleged that this was an "additional overt [act] that [is] intrinsic to the RICO conspiracy, and which we may introduce at trial." (R. 1193, Joint Motion in Limine No. 11 With Incorporated Memorandum of Law, Page ID# 5263). Mr. Meyerholz alleged that this was "… not intrinsic to the RICO conspiracy and are highly prejudicial and cumulative, this Court should not permit the government to introduce any evidence regarding [this act] at trial pursuant to Federal Rules of Evidence 403 and/or 404(b)." (Id.). The district court denied this motion without hearing as well. (R. 1345, Memorandum opinion and omnibus order III, Page ID# 6611-6650).

Trial began on June 1, 2022 and continued until September 2022. A delay of approximately 3 weeks occurred on August 17, 2022 because a co-defendant tested positive for COVID. (R. 2281, Order, Page ID# 15802). For a variety of reasons, the district court ordered the trial to resume on September 6, 2022. (R. 2311, Order, Page ID# 16070).

The delay of approximately 3 weeks occurred during the testimony of a key witness – Robert Humiston. Mr. Meyerholz moved for a mistrial based on the delay between the direct and cross-examinations of Mr. Humiston. (R. 2314, Motion for

Mistrial Based on Confrontation Violation Between Direct and Cross Examinations of Key Witness, Page ID # 16163). Following a hearing, the district court denied the motion for mistrial and ordered the trial to resume on September 6, 2022. (R. 2323, Order, Page ID # 16265).

Based largely on the testimonies of Christian Dykes and Mr. Humiston, the jury convicted Mr. Meyerholz as to all counts on September 16, 2022. The district court sentenced him to a term of life imprisonment in Counts 1, 56, 57 and 59. The district court sentenced him to 240 months in Count 55. Those terms were concurrent with each other but consecutive to a 7-year term in Count 58. (R. 2758, Judgment, Page ID# 27978-27985).

## SUMMARY OF THE ARGUMENT

The district erred by failing to sever Appellant from his co-defendants. The jury was exposed for several weeks to evidence that was irrelevant to Mr. Meyerholz' case. The spillover prejudice against Mr. Meyerholz was incredible.

The district court erred by excluding reference to a fight at Rookie's Bar. That altercation was irrelevant as to whether Appellant was part of a racketeering enterprise. The jury's hearing that evidence was unfairly prejudicial.

The district court erred by failing to declare a mistrial in August 2022. There was a delay of approximately 3 weeks between the direct and cross examinations of

witness Robert Humiston. The delays during the trial had an adverse effect on the jurors' abilities to render a fair and just verdict based upon the evidence presented.

The government failed to prove a common purpose. The facts showed groups of people or individuals acting for their own interests, failing to follow the rules of their own organization, and doing things completely outside of any sanctioned or common purpose.

A racketeering enterprise must be "a continuing unit that functions with a common purpose." *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524 (1981). It must have at least 3 structural features: "a *purpose*, *relationships* among those associated with the racketeering enterprise, and *longevity* sufficient to permit these associates to pursue the racketeering enterprises' purpose." *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). Further, under a substantive RICO charge, a "pattern of racketeering activity" requires "at least 2" predicate acts. 18 U.S.C. § 1961(5). Nothing like that happened in this case.

# ARGUMENT

## I.    THE DISTRICT COURT ERRED BY FAILING TO SEVER APPELLANT FROM HIS CO-DEFENDANTS

### A. Severance is required if a joint trial would prevent the jury from making a reliable judgment about a defendant's guilt or innocence.

Rule 14 of the Federal Rules of Criminal Procedure provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Court generally reviews a district court's denial of a motion to sever for an abuse of discretion. *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020).

"[A] 'spillover of evidence' from one case to another 'generally does not require severance,' unless Defendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014). Even if the defendant can establish "some potential jury confusion, this must be balanced against society's need for speedy and efficient trials." *United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985). And "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539,113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

The Court has held that severance is required when in "… cases involving large numbers of conspiracies and conspirators, where it is impossible 'for the jury to give each defendant the separate and individual consideration of the evidence against him to which he was entitled.'" *Gallo* at 1526. Severance is appropriate, however, if "a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Examples of circumstances warranting severance due to the severity of potential prejudice include "'mutually antagonistic' or 'irreconcilable' defenses." *Zafiro*, 506 U.S. at 538. Other probative facts include "whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *United States v. Soto*, 794 F.3d 635, 656-57 (6th Cir. 2015). Ultimately, to show prejudice, "[t]he movant must demonstrate an inability of the jury to separate and treat distinctively evidence relevant to each particular defendant." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).

      B.  The district court erred by not severing Mr. Meyerholz from his co-defendants at trial.

The Third Superseding Indictment charged 72 counts against 18 defendants. (R. 485, Third Superseding Indictment, Page ID# 1321-1389). Of the 72 counts charged against these individuals, Mr. Meyerholz was named in just 8. Specifically,

Mr. Meyerholz was named in Counts 1, 55, 56, 57, 58, 59, 60 and 62. (Id.). The bulk of the allegations against Mr. Meyerholz dealt with the kidnapping and murder of Stephen Cole. (R. 485, Third Superseding Indictment, Page ID# 1341-1342). Count 1 charged him with being a member of a racketeering enterprise: the overt act alleged Mr. Cole's kidnapping and murder. In other words, much of the allegations were irrelevant to Mr. Meyerholz.

Trial began on June 1, 2022. (R. 2072, Minute Entry, Page ID# 13694). The first witness who referred to Mr. Meyerholz in having a role in any crime with any detail – Chris Wilson - testified on August 4, 2022. (R. 2422, Trial Transcript - Vol. 27, Page ID# 20944). Including the days spent in voir dire, the jury had been in trial for over 25 days at that point. They had heard harrowing testimony about a woman's kidnapping and murder. Incredibly, the jury heard testimony about this woman – who was later murdered – offer herself to be raped in exchange for her life to be spared. (R. 2413, Trial Transcript - Vol. 12, Page ID# 18904). They had heard hours of testimony about drug sales. None of that was relevant to Mr. Meyerholz' matters.

Mr. Meyerholz is aware that "[a] 'spillover of evidence' from one case to another 'generally does not require severance,' unless Defendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *Fields*, 763 F.3d at 457. The "spillover of evidence" in this case was remarkable. The jury was exposed to weeks of testimony that was disturbing – but had nothing to do with whether Mr.

Meyerholz was guilty. Had Mr. Meyerholz' trial been severed from that of his co-defendants' trials, the jury would not have been exposed to any of that irrelevant testimony. In allowing joint trials - and therefore testimony that was irrelevant to Mr. Meyerholz - the jury then heard yet more violence that co-defendants perpetrated that colored Mr. Meyerholz' character. It was great unfair prejudice.

This irrelevant evidence was of huge prejudice and confusion to the jury. It did not relate to Mr. Meyerholz. Yet the jury was exposed to it for weeks. The jury's hearing days of irrelevant and violent testimony outweighed any judicial economic issues.

A rationale that the Court has used to ascertain if severance was appropriate was whether there was any evidence admissible against only co-defendants that created prejudice against a defendant. *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020). Appellant respectfully submits that a jury's hearing violent – yet irrelevant - evidence during a trial unfairly prejudiced the jury against him. Common sense dictates that a jury's hearing evidence for days of co-defendants' abducting and then killing a woman – while Mr. Meyerholz was seated next to these co-defendants and part of the same motorcycle gang – was devastating to Appellant's due process rights. This evidence was irrelevant towards Appellant's guilt or innocence. It prejudiced the jury against him.

Appellant is aware that "[j]oint trials are favored in this circuit, and the spillover of evidence from one case to another does not require severance." *United States v. Cordero*, 973 F.3d 603, 624 (6th Cir. 2020). The joint trials that the Court has reviewed and upheld, however, were not as complex as Mr. Meyerholz' matter. None involved as many co-defendants as this. None involved weeks of unrelated testimony – as happened here. None involved a trial that lasted for portions of 4 months with the jury's not hearing any real proof against a defendant until almost 2 months had passed.

A simple jury instruction cannot resolve problems with prejudice in a scenario this complex. Mr. Meyerholz' jury was exposed to voluminous amounts of irrelevant evidence. Parts of it were disturbing. (R. 2413, Trial Transcript Vol. 12, Page ID# 18904). Curative instructions might have been acceptable if the trial had involved only 2 or 3 co-defendants and had lasted no more than 2 weeks. That hypothetical trial would have lasted 10 working days. That jury would have been seated after 1 or 2 days of voir dire. It would have heard no more than 3 or 4 days of irrelevant testimony before the prosecution would have submitted material proof. The hypothetical jury would not have been exposed to a tremendous amount of irrelevant evidence. This trial, however, involved 7 co-defendants. There were weeks of unrelated testimony. This trial lasted for portions of 4 months with the jury's not hearing any real proof against Mr. Meyerholz until almost 2 months had passed.

Appellant respectfully submits that the district court erred by not severing him from his co-defendants at trial.

## II. THE DISTRICT COURT ERRED BY ALLOWING THE PROOF OF AN UNRELATED FIGHT TO BE PRESENTED TO THE JURY

### A. Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person unless there are certain exceptions.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Court has directed that "[t]he Rule 404(b) inquiry consists of three parts:"

> First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403.

*United States v. McGee*, 510 Fed. Appx. 377, 381 (6th Cir. 2013). Mr. Meyerholz understands that "[w]here the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule 404(b) is not applicable." *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011).

Mr. Meyerholz was charged with racketeering in Count 1 of the Third Superseding Indictment. Conviction of a substantive RICO offense required proof

of "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity."

*Salinas v. United States*, 522 U.S. 52, 62, 118 S.Ct. 469 (1997). A "pattern of racketeering activity" will be found only upon proof of "at least 2 acts of racketeering activity," 18 U.S.C. § 1961(5). "Unlike a substantive RICO charge, a RICO conspiracy charge does not require proof that the defendant committed any predicate acts" and "does not even require proof that the defendant 'agreed to commit two predicate acts himself, or even that any overt acts have been committed.'" *United States v. Fowler*, 535 F.3d 408, 421 (6th Cir. 2008). Instead, a RICO conspiracy charge "requires proof that the defendant 'intended to further an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] criminal offense [and] it suffices that he adopts the goal of furthering or facilitating the criminal endeavor.'" *Id*.

>    B.  The fight did not fall into any of the exceptions and should have been excluded.

The fight occurred on September 22, 2017 at Rookie's Bar between David Denman and 2 other men. (R. 2422, Trial Transcript Vol. 27, Page ID# 20902). The parties got into an argument in the parking lot at approximately 3 AM. Mr. Denman said that the men accused him of giving them a "… dirty look." (Id.). The men then accused him of "talking shit about the Mongols." (Id.). The fight ensued. Mr. Denman – who was on probation for a violent felony - sustained an injury to his nose

15

and head but was not hospitalized. (R. 2422, Trial Transcript Vol. 27, Page ID# 20915). The 2 Mongols left the parking lot. No arrests were made.

This fight was not in furtherance of the RICO conspiracy. It simply was a fistfight among 3 drunken men outside of a bar. The fight at Rookie's Bar was not intrinsic to any racketeering conspiracy. It led to an emotionally based verdict. It confused the issues to be tried. This irrelevant evidence distracted the jury from its primary objective – deciding the relevant counts in the indictment. The testimony was unfairly prejudicial yet irrelevant. It was improper character and propensity evidence under FRE 404(b) and should have been excluded.

## III. THE DISTRICT ERRED BY FAILING TO DECLARE A MISTRIAL BASED ON THE DELAY BETWEEN THE DIRECT AND CROSS EXAMINATION OF WITNESS ROBERT HUMISTON

### A. Standard of review.

The Court's review for denial of a defendant's motion for mistrial is under an abuse of discretion standard. *United States v. Woods*, 14 F. 4th 544, 558 (6th Cir. 2021).

### B. The delay between direct and cross-examination violated Mr. Meyerholz' Sixth Amendment right to confrontation.

The government presented Robert Humiston as a witness on August 16, 2022. Mr. Humiston was a co-defendant who began cooperating with the prosecution. Mr. Humiston's testimony was dedicated primarily to Mr. Cole's murder. His testimony was both graphic and horrific. Mr. Humiston described details of a merciless beating.

Humiston told the jury that Cole's final words included concern for his child. Mr.

Humiston told the jury that a nail was driven into Cole's head. Portions of Mr.

Humiston's testimony were offensive and bloodcurdling. Mr. Humiston testified as

follows:

> Q. You said that Mr. Boylston talked about tying Cole to a chair and
> beating him. Did he tell you how bad they beat him?
> A. He said they beat him so bad that his scalp was -- skin was falling
> off his head. He said he must have been hopped up on some PCP or
> something because he was breaking the zip ties that they had him
> strapped to while they were torturing him. I said, well, did you even get
> the information out of him about where your bikes -- that he stole your
> bikes? He said, he never admitted to it. He went through all that and he
> never said anything -- admitted to his bikes being gone. He said -- he
> said -- I said, well, why didn't you just let him go? They said they beat
> him so bad that if they took him to the hospital, it... They were afraid if
> they ended up getting -- recovering, he might have said something. And
> then he said that he was just too badly beaten and gone, that they just
> killed him.

> (R. 2440, Trial Transcript, Volume 31, Page ID# 24324).

Mr. Humiston implicated Mr. Meyerholz in this horrific murder. Mr.

Humiston testified that he was involved in multiple conversations with Mr.

Meyerholz. Appellant apparently admitted to kidnapping Mr. Cole in these

conversations. The prosecution secured the following testimony:

> Q. A few minutes ago you said the next day Mr. Meyerholz came to
> your house; is that right?
> A. Yes. He called me, asked if he could come over, sounded distraught
> on the phone. When he got there, I was sitting on the porch smoking
> some weed. He came up, sat down and he was crying. He was -- he was
> bawling about what had happened, what he did. You know, saying that

he wasn't gonna let a brother do -- go it alone. He was going to have his brother's back, so he did -- he helped JC with what he did.

Q. I'm sorry, I didn't hear that last part?

A. He helped JC. As far as -- as much as he helped, I'm not exactly sure. I didn't really ask. He was there for the kidnapping, from what he said. He was in and out -- he was in and out of the shed to the house because he said it was making -- he was getting sick to his stomach of it. Things that were happening. He kept going back in the house, saying he was going to check on Flip's old lady. And come back out and go back in. He said he was supposed to hide the body that night. He didn't know where he was supposed to go, though. He was driving around. Eventually he pulled over and said, I'm not going to keep driving around somewhere I don't know with a body in the back of the truck, so he went back home.

Q. At this point in November of 2017, how long had Mr. Meyerholz been in Tennessee?

A. That picture you showed with all of us, he was still Colorado, so probably a month before that date until we got picked up. I'm not exactly -- not exactly a year, but...

Q. Okay. So at least a few -- just a few months?

A. Yeah.

Q. You said Mr. Meyerholz made statements about when they took Mr. Cole?

A. Yes.

Q. What do you remember him saying?

A. He said he went in there and he – they were sitting in one of the rooms, living room or whatever. They came in the door, and he held -- he had all the people stay where they're at, held them there while JC went and got Lurch. Q. During that conversation did Meyerholz make statements about who had killed Cole?

A. He told -- he told me that Wild Card did it. I asked him, I said, how did Wild Card do it? I said, JC told me he did it last night. He said, oh, I don't know why he would say that. I said, that makes no sense. Why is a brother gonna lie to me about something that happened and now you're telling me something else? He said, well, he -- he's the one who did it and he's hiding the body right now, that he has his truck and he's hiding the body. I didn't really believe him because, like I said, I -- I'm sitting here telling – JC's telling me all this stuff and admitting what he did because he's afraid he's going to lose his patch and everything else that was happening. He told me what happened, so that way we could

pass the information on and have it -- them understand what they were doing that night.

Q. And why they missed misa with Steady?

A. Yeah.

Q. Again, was anybody's patches taken for that?

A. No. I never -- I never passed information to Steady. Flip called him and told him that if that's the way it is, that he'd just give up his patch and let everybody else that missed keep theirs. He honestly felt that he was doing -- handling chapter business. I never told Steady about it because -- honestly, I didn't -- I was trying to prevent something like this from happening. There was no reason for me to pass that farther up the line and have anyone else get caught up in anything.

Q. When Mr. Meyerholz was at your house, did he make any statements about the shed?

A. Yeah. Yes, he -- he said -- he said him and JC said they're not gonna go to that house anymore until that shed's gone. They asked me -- he asked me to burn the shed down for them. I told him, I said, I'm not gonna just go and do that. Bro's got his bike right next to it. Eventually I said I was going to do it, but I -- I never ended up -- I never did.

Q. Now, earlier you mentioned something about Cole's ATM card; is that right?

A. Yes.

Q. Mr. Meyerholz make any statements to you about Cole's ATM card?

A. He said it was -- it was negative. He said it was overdrafted balance on it when he went and checked to see what was on it.

Q. Who went and checked to see what was on it?

A. Country.

Q. So Country told you at some point he took Cole's ATM card and checked his bank balance?

A. Yes.

Q. Did he make any statements about being concerned about that?

A. Yeah, he was worried that they might have seen his face. He wore -- he wore a full face helmet to go -- while he did it. He was worried he might have got caught on camera or something.

Q. Do you know how Meyerholz and Boylston got Cole's ATM PIN?

A. When they were torturing him in the shed for the debt that he was owed, for JC's money.

(R. 2440, Trial Transcript, Volume 31, Page ID# 24327-332).

Co-defendants' counsel then briefly cross-examined Mr. Humiston. Neither of those co-defendants were implicated in the Cole murder. Counsels' cross-examinations were cursory. Neither cross-examination challenged Mr. Humiston's credibility. Neither cross-examination delved into Mr. Cole's murder. Counsel questioned Mr. Humiston as to historical information regarding the motorcycle club. (R. 2440, Trial Transcript, Volume 31, Page ID# 24353). The trial ended on August 16, 2022 with Mr. Humiston still on the witness stand. Counsel for Mr. Meyerholz was waiting to question Mr. Humiston. Counsel for Mr. Meyerholz moved for a mistrial on August 31, 2022. (R. 2314, Motion for Mistrial Based on Confrontation Violation, Page ID# 16163). The Court denied the motion. (R. 2323, Order, Page ID# 16265). The trial did not resume until September 6, 2022. Approximately 3 weeks had passed since Mr. Humiston had testified on direct examination.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him."

> Confrontation: (1) insures that the witness will give his statements under oath -- thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

20

*California v. Green*, 399 U.S. 149, 158, 90 S. Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970). The right to confront includes the right to *effective* cross-examination. *Davis v Alaska,* 415 U.S. 308, 316 (1974). At least 1 other court has held that effective cross-examination should be immediate. The Indiana Supreme Court wrote that "immediate cross examination is the most effective, and that delayed cross examination is the least effective." *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991).

In this case, again, there was a 3-week delay between the direct and cross-examination of Mr. Humiston. Mr. Meyerholz was charged with kidnapping and murder. The jury heard testimony that was disturbing – and considered it for almost a month. Mr. Meyerholz lost the ability to confront that testimony through cross-examination given the amount of time that had elapsed. The cross examination that ensued was ineffective.

By nature, cross-examinations of witnesses are more effective when closer in time to the direct examination. The "sting" of witness testimony is fresh in the minds of the jurors. An effective cross-examination that exposes lies, errors, overstatements, inconsistencies, biases, and contradictions is far more effective when it happens immediately after direct examination. A temporally proximate cross-examination can negate that sting before it sets in stone in the minds of the jury.

However, in this case, the jury contemplated the uncontested direct examination of a key, very damaging witness for weeks. Counsel then was allowed to challenge the harmful allegations. Mr. Meyerholz' confrontation rights were violated.

Appellant has a constitutional right to effective cross-examination. Serious prejudice existed when Mr. Meyerholz could not question Mr. Humiston until 3 weeks after his direct testimony. "[T]he focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). When the focus of the analysis is on the actual testimony of Mr. Humiston and the length of delay, the violation is clear.

### C. Mistrial was warranted.

A mistrial should be granted only when "manifest necessity exists," *United States v. Williamson*, 656 F. App'x 175, 181 (6th Cir. 2016), so as to balance a defendant's "valued right to have his trial completed by a particular tribunal," with "the public's interest in fair trials designed to end in just judgements," *Arizona v. Washington*, 434 U.S. 497, 503, 516, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). Manifest necessity "is not to be interpreted literally or applied mechanically; what is required is a 'high degree' of necessity." *Ross v. Petro*, 515 F.3d 653, 660-61 (6th Cir. 2008). Mistrials should only be granted "where there is a legitimate claim

of seriously prejudicial error." *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990).

The Court has noted that "a determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion…" *United States v. Atisha*, 804 F.2d 920, 926 (6th Cir. 1986). "[T]he single most important factor [in deciding a mistrial motion] is the extent to which the defendant has been prejudiced." *United States v. Richmond*, 884 F.2d 581 (6th Cir. 1989). Mr. Meyerholz suffered actual prejudice. His confrontation rights and his right to an effective cross-examination were violated because of the incredible delay between the direct and the cross-examinations of Mr. Humiston. The district court should have granted a mistrial.

## III.    THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS

A. Standard of review.

The Court reviews "*de novo* the sufficiency of the evidence to sustain a conviction." *United States v. Emmons,* 8 F.4th 454, 477 (6th Cir. 2021). The Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States,* 577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016).

B. Authorities in support.

A defendant violates the Racketeer Influenced and Corrupt Organizations Act - "RICO" - if he "conduct[s] or participate[s], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity," or conspires to do so. 18 U.S.C. § 1962(c) and (d). The prosecution must prove 4 elements to establish a RICO conspiracy: (1) agreement, (2) to conduct or participate, (3) in an enterprise, (4) through a pattern of racketeering activity." *United States v. Gills*, 702 F. App'x 367, 373 (6th Cir. 2017). An association-in-fact racketeering enterprise must be a continuing unit that functions with a common purpose. *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524 (1981). It must have at least 3 structural features: (1) a purpose, (2) relationships among those associated with the racketeering enterprise, and (3) longevity sufficient to permit these associates to pursue the racketeering enterprises' purpose." *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009). Further, under a substantive RICO charge, a "pattern of racketeering activity" requires "at least 2" predicate acts. 18 U.S.C. § 1961(5).

C. Argument

The government failed to prove a racketeering enterprise that engaged in a RICO conspiracy. The facts showed a lack of common purpose. Individuals acted on their own. They acted for their own interests. These individuals regularly failed

to follow the rules of their own alleged organization. They participated in activities completely outside of any group sanctioned or common organizational purpose. Although many of the co-conspirators were friends, the alleged enterprise lacked anything resembling a coherent structure. Its members often acted on their own.

Although the Mongols organization had rules, many witnesses did not follow those regulations. Many of their activities introduced at trial appeared to be completely outside the boundaries of the gang and its organizational structure. For example, alleged members robbed each other. Specifically, Kyle Heade admitted that he and another person had robbed co-defendant Derek Stanley. (R. 2419, Trial Transcript, Volume 22, Page ID# 20226).   Also, individuals sold drugs for their own benefit - rather than under the employ of the gang – and used prostitutes to do so. (R. 2415, Trial Transcript – Volume 14, Page ID# 19260).

The evidence at trial showed that these men committed crimes "on their own." The fight at Rookie's Bar – for example – was an altercation among 3 drunk men. (R. 2422, Trial Transcript Vol. 27, Page ID# 20902). This crime was committed to further their own interests. The fight was outside the structure of the gang.

The kidnapping and murder of Stephen Cole was committed over a debt. (R. 2440, Trial Transcript – Volume 31, Page ID# 24332). The debt stemmed from Mr. Cole's either stealing or selling William Boylston's motorcycles. It was not

sanctioned or ordered by the gang itself. No one obtained permission from Mongols' leaders prior to murdering and kidnapping Mr. Cole.

Further, witnesses Christian Dykes and Robert Humiston should not have been believed by any rational trier of fact. Their testimony was crucial in the government's proof. Witnesses admitted to lying about basic facts in their pretrial interviews with police - though the prosecution asked the jury to believe them at trial. Many witnesses testified with the goals of obtaining lower sentences and possible release. Mr. Meyerholz is aware that credibility issues do not typically rise to the sufficiency of the evidence. Those issues affect the weight of the evidence. However, Mr. Dykes admitted that he told people that he – not Mr. Meyerholz or Mr. Boylston - killed Mr. Cole (R. 2439, Trial Transcript – Volume 30, Page ID# 23973). Mr. Meyerholz respectfully submits that this drifts from the weight of the evidence to sufficiency. Mr. Dykes - who testified regarding Mr. Meyerholz' alleged involvement in the gang and these crimes – admitted that he had lied to law enforcement many times. At trial, the prosecution asked the jury to believe this witness.

The testimonies of alleged co-conspirators and associates of the gang were wildly inconsistent. A rational trier of fact would have understood that each of these witnesses had an overwhelming motivation to lie or exaggerate their testimony. Many were expecting reductions in their sentences from the Court due to their

cooperation with law enforcement. Others feared reprisal from the gang for testifying. Those issues - coupled with admitted lies about basic facts - should have led any rational juror to discard proof from these witnesses. There was also insufficient proof that Mr. Meyerholz kidnapped and murdered Stephen Cole – especially when Christian Dykes admitted that he had told people that he had killed Mr. Cole. (R. 2439, Trial Transcript – Volume 30, Page ID# 23973).

Since there were no eyewitnesses to Mr. Cole's murder, the jury relied on the testimony of co-conspirators. The witnesses were established liars. They had overwhelming motivation to exaggerate due to cooperation agreements with the government. Their testimonies should not have been relied upon by a rational jury.


## CONCLUSION

The district court erred by not severing Mr. Meyerholz from his co-defendants at the trial of this cause. The jury heard days of testimony that was violent and disturbing – but irrelevant as to whether Mr. Meyerholz was guilty of these offenses.

The district court erred by allowing reference to a fight outside of Rookie's Bar. The barfight had nothing to do with the allegations contained in the indictment. It was irrelevant and inflammatory.

The district court erred by failing to declare a mistrial following the direct examination of Robert Humiston. There was a 3 week delay between the direct and

cross examinations of this key witness. Since the jury had considered this testimony unchallenged for almost a month, the cross examination that ensued after this lengthy delay was unproductive.

Finally, there was no evidence that Mr. Meyerholz engaged in racketeering. He did not engage in organized crime. The district court erred by failing to set the verdict aside.

Respectfully Submitted,

*Juni S. Ganguli*

Juni S. Ganguli (TN 18659/ MS 99163)
202 Adams Avenue
Memphis, TN 38103
901-544-9339

Attorney for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 37(a)(7)(B), of the Federal Rules of Appellate Procedure, I certify that, according to the word processing system used to prepare this brief, Microsoft Word, this brief contains 6,662 words, exclusive of potions exempted from the word limitation provided by Rule 37(a)(7)(B).

<u>/s/ Juni S. Ganguli</u>
Juni S. Ganguli
Ganguli Law Firm
202 Adams Avenue
Memphis, TN 38103
901-554-9339
*Attorney for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/Juni S. Ganguli
Juni S. Ganguli
GANGULI LAW FIRM
202 Adams Avenue
Memphis, TN 38103
901-554-9339

*Attorney for the Appellant*

**COUNSEL SERVED:**

Katy Risinger
John Christopher Suedekum
OFFICE OF THE U.S. ATTORNEY
719 Church Street
Suite 3300
Nashville, TN 37203
615-736-5151

**Designated District Court Documents**

| PAGE ID#s | Description of Proceeding or Testimony |
|---|---|
| 1321-1389 | R. 485, Third Superseding Indictment |
| 1838-1843 | R. 585, Amended Scheduling Order |
| 3175 | R. 893, Motion to Sever |
| 4053-4098 | R. 998, Memorandum opinion and omnibus order |
| 5263 | R. 1193, Joint Motion in Limine No. 11 With Incorporated Memorandum of Law |
| 6611-6650 | R. 1345, Memorandum opinion and omnibus order III |
| 6922-6931 | R. 1395, Joint Motion to Continue Trial |
| 7275-7276 | R. 1436, Order to Continue |
| 8714-8715 | R. 1574, Order to Continue |
| 10745-10748 | R. 1874, Order |
| 13694 | R. 2072, Minute Entry |
| 15802 | R. 2281, Order |
| 16070 | R. 2311, Order |
| 16163 | R. 2314, Motion for Mistrial Based on Confrontation Violation Between Direct and Cross Examinations of Key Witness |
| 16265 | R. 2323, Order |
| 16381 | R. 2367, Minute Entry |
| 16468-16526 | R. 2385, Minute Entry |
| 18904 | R. 2413, Trial Transcript, Vol. 12 |
| 19260 | R. 2415, Trial Transcript, Vol. 14 |
| 20226 | R. 2419, Trial Transcript, Vol. 22 |
| 20902, 20915, 20944 | R. 2422, Trial Transcript, Vol. 27 |
| 23973 | R. 2439, Trial Transcript, Vol. 30 |
| 24324, 24332 | R. 2440, Trial Transcript, Vol. 31 |
| 27978-27985 | R. 2758, Judgment |
| 28055 | R. 2769, Notice of Appeal |